were taken by the present appellants, and are now pending. If so, all questions as to the assessment of damages and as to whether the assessment of benefits against appellants was properly made, can there be determined. Consideration of such questions here would be prema-- ture.

The assignments of error are overruled, and the order of the court below is affirmed.

# Safe Deposit & Title Guaranty Co., Appellant, v. Linton.

*Municipalities—Eminent domain—Condemnation for water main —Sale of land after appropriation—Grantor and grantee—Right to damages.*

1. Damages for the appropriation of land by either a public or private corporation with the right of eminent domain belong to the owner of the land at the time the appropriation is made.

2. Condemnation proceedings were commenced against a property owner by a municipality for purposes of laying a water main. After the completion of the work the owner conveyed the land to a bank in trust for the payment of money owed by her to the bank, with the stipulation that the land was to be reconveyed to her when such money was paid the bank. Several years later the defendant filed a bill in equity against the bank for an accounting under the provisions of such declaration of trust, and the court entered a decree providing, "This decree is in full settlement and accord of all matters in dispute between the parties hereto in relation to the subject-matter of this case," and all rights which may have been claimed by the defendant with respect to the lands included in the declaration of trust are "forever barred and concluded." On the entry of such decree a settlement was effected under which defendant executed a quitclaim deed to the plaintiff for the property. Thereafter a feigned issue was framed, in which the grantor was named as defendant and the grantee bank as plaintiff, to determine which was entitled to damages for the appropriation. The trial judge directed a verdict for the plaintiff. *Held,* the lower court did not err in subsequently entering judgment for defendant non obstante veredicto.

3. In such case where the original deed from the defendant to

the bank, while on its face a general warranty deed, was in effect a mortgage given to secure the payment of money already owed and money to be advanced, the general warranty clause did not estop the defendant from saying that she had not conveyed the damages arising from the appropriation of her land by the city, although she failed expressly to reserve the easement.

4. In such case the decree in the proceedings for an accounting did not operate as a bar to plaintiff's right against the city, and concerned only the rights arising out of the declaration of trust in the original deed from plaintiff to defendant.

Argued Oct. 20, 1916. Appeal, No. 137, Oct. T., 1916, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1915, No. 2245, entered for defendant non obstante veredicto in case of Safe Deposit & Title Guaranty Company v. Phœbe R. E. E. Linton. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Feigned issue between Safe Deposit & Title Guaranty Company as plaintiff and Phœbe R. E. E. Linton, as defendant, to determine which of said parties was entitled to receive from the City of Pittsburgh damages occasioned an interest in certain real estate by the laying of a city water conduit.

The facts appear in the following opinion by EVANS, J.:

"This is a feigned issue to determine which of the parties to the suit is entitled to the damages arising from the appropriation of certain lands by the City of Allegheny in the construction of its water main. The material facts are not in dispute. In 1895, the City of Allegheny entered upon certain lands in the Erdner Plan in the Borough of Etna and laid a water main across eight lots in said plan and along an alley upon which other lots of the plan abutted. The title to this alley by reason of nonuser had reverted to the abutting lot owners. The eight lots crossed by the water main, and twenty-one lots abutting the alley upon which the water main was laid, were

at that time, and had been for some time previous, the property of James E. Brown and the defendant Phœbe R. E. E. Linton as tenants in common. On December 7, 1895, the City of Allegheny commenced condemnation proceeding against the defendant and James E. Brown for the right of way across the eight lots; presented its petition and filed a bond in the sum of $8,000. In January, 1915, an additional bond was filed on the petition of James E. Brown covering the twenty-one lots not mentioned in the original petition. The water main was completed not later than the early part of 1896. On December 30, 1901, the defendant and her husband executed a deed of general warranty to the Safe Deposit & Title Guaranty Company, plaintiff above named, conveying, inter alia, her interest in the twenty-one lots above mentioned. This deed was recorded in Armstrong County on February 4, 1902, but not recorded in Allegheny County. On February 3, 1902, the Safe Deposit & Title Guaranty Company executed a declaration of trust in favor of A. F. Linton and Phœbe R. E. E. Linton, by which it acknowledged that it held the land in dispute in trust for the payment of money then owed by Mrs. Linton and her husband to the Safe Deposit & Title Guaranty Company, and for the payment of money to be advanced by that company to Mrs. Linton and her husband; and upon the payment thereof to make reconveyance of the property granted and conveyed in the deed above mentioned. This declaration of trust was recorded in Armstrong County on June 5, 1903. A deed similar to the deed dated December 30, 1901, and dated December 28, 1902, was recorded in Allegheny County on February 27, 1903. Some years after this transaction a bill in equity was filed by the Lintons in the United States District Court for the Western District of Pennsylvania for an account under the provisions of the declaration of trust, and in January, 1907, that litigation was settled and a decree entered by consent, which decree contained the following provision:

" 'This decree is in full settlement and accord of all matters in dispute between the parties hereto in relation to the subject-matter in this case and all demands, claims, actions or rights of action which may have existed or have been claimed by the said A. F. Linton and Phœbe R. E. E. Linton, his wife, with respect to the lands hereinabove referred to and arising out of the so-called declaration of trust being the paper dated February 2, 1902, and recorded, etc., are hereby forever barred and concluded.'

"On the date of this settlement the Lintons executed a quitclaim deed to the Safe Deposit & Title Guaranty Company covering the land in dispute in this case with other lands in the original deed, and the Safe Deposit & Title Guaranty Company paid to the Lintons some seventeen hundred dollars in cash.

"There was nothing in the deed of December 30, 1901, or December 28, 1901, reserving the right of way of the City of Allegheny over the lots in question for its water main, and it appears at that time the Lintons did not know that the condemnation bond and petition of Allegheny City had been filed in court. On the date of the settlement of the litigation in the United States Court and the conveyance of the land by quitclaim deed, the fact that the City of Allegheny had its water main across the land in dispute was known to the Safe Deposit & Title Guaranty Company. The condemnation proceeding was referred to a board of viewers, who made its report. Before that board of viewers Mrs. Linton appeared and put in a claim for the damages for the appropriation of the land, and the Safe Deposit & Title Guaranty Company appeared making a similar claim. The board of viewers reported in favor of Mrs. Linton and from that report both Mrs. Linton and the Safe Deposit & Title Guaranty Company took an appeal. This feigned issue was framed for the purpose of determining which of the parties was entitled to the damages before the appeal was tried.

"It has been too well settled to require any discussion that the damages for the appropriation of land either by a public corporation or by a private corporation with the right of eminent domain belong to the owner of the land at the time the appropriation is made; and, unless there is something in this case to vary that rule, Mrs. Linton is entitled to the damages for the appropriation of the land by the City of Allegheny. The deed of Mrs. Linton and her husband to the plaintiff company was on its face a general warranty deed, and if that had been its real effect, there might be a serious question if Mrs. Linton was not estopped from saying that she had not conveyed the damages arising from the appropriation of her land by the said city when she failed to reserve the easement of the City of Allegheny across the land. But as I view the transaction, this was not a conveyance of the land by general warranty deed, but was, in effect, a mortgage given to secure the payments of money already owed and money to be advanced, and when that mortgage was paid in 1907 by the quitclaim deed of this land with other lands, the plaintiff company knew of the existence of the easement of the City of Allegheny across the land in question and chose to accept the land in payment of its debt with the easement there. This, I take it, disposes of the question of estoppel so far as the deed of December 30, 1901, is concerned.

"But it is claimed by counsel for the plaintiff that the decree of the court entered in January, 1907, in settlement of the litigation between these parties was in itself an assignment of the damages arising from the appropriation of the land by the City of Allegheny. I do not so understand that decree. It was in full settlement and accord of all matters in dispute between the parties in relation to the subject-matter in that case and "all demands, claims, actions or rights of action which may have existed or may have been claimed by the said A. F. Linton and Phœbe R. E. E. Linton, his wife, with respect to the lands hereinabove referred to and arising out of

the so-called declaration of trust" were forever barred and concluded. It was the claims which Mrs. Linton was making in that suit arising out of the deed of trust that were barred and concluded and not the claim which Mrs. Linton may have had against the City of Allegheny for the appropriation of her lands, and which was not mentioned or in any way considered in the litigation in question.

"It is further urged by counsel for the plaintiff that even if the plaintiff is not entitled to recover the damages to the eight lots, it is entitled to recover the damages to the twenty-one lots abutting on the alley, and which were not included in the petition filed in 1895. I do not see any distinction between the two pieces of property. The appropriation was made by the City of Allegheny at the same time, and while, no doubt, supposing this was a public alley, they did not include the lots abutting in their petition, yet, they have been included and the appropriation dates back to the original taking. It was not two separate and distinct appropriations by the City of Allegheny; it was one; and I doubt whether it was necessary to present a new petition. The original petition should have been amended to accord with the facts.

"Verdict was directed in this case for the plaintiff for the reason that there were no facts in dispute, and I desired additional time to consider the matter, and having fully considered the position of the several parties and their authorities, I am of the opinion that the defendant, Mrs. Linton, is entitled to the damages arising from the appropriation of this land."

On the trial the court directed a verdict for the plaintiff, but subsequently entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for the defendant n. o. v.

*James S. Campbell,* for appellant.—Until there has been a lawful taking or until damages have been recovered on the basis of a permanent unlawful taking the occupancy by the city is a continuing trespass, for which an owner may recover damages for permanent injury either in trespass or before viewers, though the unlawful entry occurred during the ownership of his predecessor in title. When such recovery is made he and his successors in title will be concluded from asserting further claims for damages: Wagner v. Purity Water Co., 241 Pa. 328; Lord v. Meadville Water Co., 135 Pa. 122; Lawrence's App., 78 Pa. 365; Davis v. Titusville & Oil City Ry. Co., 114 Pa. 308; Easton Borough's App., 47 Pa. 255.

The quitclaim deed amounted to an assignment of defendant's right of action against the city to the plaintiff: DeWitt v. Lehigh Valley R. R. Co., 21 Pa. Superior Ct. 10; Brenner's App., 2 Walker (Pa.) 92; Keller's App., 2 Walker (Pa.) 32.

*Samuel S. Mehard,* with him *Cornelius D. Scully* and *Churchill B. Mehard,* for appellee.—Damages arising by reason of the taking of land under eminent domain proceedings belong to the owner at the time of the appropriation and do not pass to a subsequent vendee in the absence of anything to show such an intent; and the fact that the conveyance was by general warranty deed does not alter the condition, a specific assignment of the choses in action being necessary: Quade v. Columbia & Port Deposit Ry. Co., 233 Pa. 20; Losch's App., 109 Pa. 72; Kaufmann v. City of Pittsburgh, 248 Pa. 41; Crider v. Pittsburgh, Harmony, Butler & New Castle Ry. Co., 54 Pa. Superior Ct. 587; Shevalier v. Postal Telegraph Co., 22 Pa. Superior Ct. 506; Fischer v. Catawissa R. R. Co. et al., 175 Pa. 554; Hoffman's App., 118 Pa. 512; Commonwealth v. Shaffer, 32 Pa. Superior Ct. 375; Howley v. Pittsburgh, 204 Pa. 428.

Even though the general warranty in the original deed

would otherwise work an estoppel, such deed was in effect not an absolute conveyance but a mortgage, and the general warranty consequently could not operate as an estoppel.

The decree and settlement did not operate as a bar to defendant's right against the city but concerned only the rights arising out of the so-called declaration of trust: Potts et al. v. Penna. Schuylkill Val. R. R. Co., 119 Pa. 278; Rudolph v. Penna. Schuylkill Valley R. R. Co., 186 Pa. 541; East Penna. R. R. Co. v. Hiester, 40 Pa. 53; Wilmington & Reading R. R. Co. v. Stauffer, 60 Pa. 374; Hoffer v. Penna. Canal Co., 87 Pa. 221; O'Brien, Exrx., v. Penna. Schuylkill Val. R. R. Co., 119 Pa. 184.

PER CURIAM, January 8, 1917:

The judgment for the defendant in the issue is affirmed on the opinion of the learned judge below directing it to be entered non obstante veredicto.

---

## Kreusler *v.* McKees Rocks School District.

*Contracts—School district—Debt—Constitutional limit—Building—Ultra vires contract—Notice of invalidity—Public policy—Injunction—Subsequent suit on implied contract—Constructive contract—Set-off—Judgment for defendant n. o. v.*

1. The only authentic and admissible evidence of public policy of a state on any given subject is its constitution, laws, and judicial decisions, and the public policy of a state of which courts take notice and to which they give effect must be decided from those sources. Where the state has spoken, through its legislature, there is no room for speculation as to what the policy of the state is.

2. Where a written contract of a school board for the erection of a school building is ultra vires and against the policy of the state, as creating a debt in excess of the constitutional limit, and work under the contract is enjoined, an action subsequently brought by the contractor on an alleged implied contract must fail where all the work and materials were furnished under the express written contract. This is not a constructive contract.

3. In such case where the contract was entered into in June and